Rex Lamont Butler
745 W. 4th Ave., Suite 300
Anchorage, Alaska, 99501
(907)272-1497
rexbutlercalendar@gmail.com
Attorneys for Joshua Wahl

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| V. | ) | 3:23-CR-00087-SLG-MMS |
| | ) | |
| JOSHUA WAHL, | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

**MOTION TO DISMISS INDICTMENT BASED ON INSUFFICIENT EVIDENCE AND VIOLATION OF WAHL'S RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT OF THE FEDERAL CONSTITUTION.**

**I**

**FACTS, IN RLEVANT PART**

Joshua Wahl, a resident of Dillingham, Alaska, is charged with one count of cyberstalking in violation of 18 U.S.C. § 2261A(2), as count 1 of his indictment and 4 counts of transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c), counts 2-5. The charges are based on emails Wahl allegedly sent to Officer Michael Chitwood (Officer Chitwood) of Volusia County Florida Sheriff's office.

It is alleged that beginning on a date unknown, but not later than in or around April 2023, and continuing through at least in or around July 2023, Wahl posted on 4chan (an online meeting site) numerous threats to injure and kill Officer Chitwood.

Specifically, it is alleged that on or about March 31, 2023, Wahl sent Officer Chitwood the following email threatening to injure and kill Officer Chitwood. Wahl stated that he was armed with lasers and explosives, and included links to a video showing Wahl utilizing a laser to burn a hole in a photograph of Officer Chitwood's face and another holding apparent explosives in front of a photograph of Officer Chitwood. [See defense exhibit 1].

Wahl is also accused of posting threats to injure and kill Officer Chitwood on or about April 5, 2023, online. The posting is alleged to state "Blind and kill [Chitwood] in irl," i.e., in real life, and that Wahl was an "actual terrorist". Also, Wahl is alleged to have said that he had "explosives, sound, plasma, lasers and ap ammo," and "Kill [Chitwood] in irl, shoot him the fucking head with a overpressure 10mm round".

On or about April 21, 2023, Wahl allegedly made another online posting threatening to injure and kill Chitwood, in that Wahl stated "Kill Mike Chitwood in irl, not fucking video games" and "Come and do something about it fedboys," and included a photograph of Chitwood with a hole burned in Chitwood's face.

The United States charged Wahl with 5 counts as follows.

2

**COUNT 1**

Beginning on a date unknown, but not later than in or around April 2023, and continuing through at least in or around July 2023, in the District of Alaska and elsewhere, the defendant, JOSHUA WAHL, with the intent to harass and intimidate Michael Chitwood, used an interactive computer service and an electronic communication service and electronic communication system of interstate commerce, and any other facility of interstate or foreign commerce, including email and 4chan posts, to engage in a course of conduct that placed Chitwood in reasonable fear of death of and serious bodily injury to himself and an immediate family member, and caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to Chitwood and an immediate family member. All of which is in violation of Title 18, United States Code, Section 2261A(2).

**COUNT 2**

On or about March 31, 2023, in the District of Alaska and elsewhere, the defendant, JOSHUA WAHL, did knowingly transmit in interstate commerce a communication containing a threat to injure Michael Chitwood as set forth in Paragraphs 7 and 8. All of which is in violation of Title 18, United States Code, Section 875(c).

**COUNT 3**

On or about April 5, 2023, in the District of Alaska and elsewhere, the defendant, JOSHUA WAHL, did knowingly transmit in interstate commerce a communication containing a threat to injure and kill Michael Chitwood as set forth in Paragraph 9. All of which is in violation of Title 18, United States Code, Section 875(c).

**COUNT 4**

On or about April 5, 2023, in the District of Alaska and elsewhere, the defendant, JOSHUA WAHL, did knowingly transmit in interstate commerce a communication containing a threat to injure and kill Michael Chitwood as set forth in Paragraph 10. All of which is in violation of Title 18, United States Code, Section 875(c).

**COUNT 5**

On or about April 21, 2023, in the District of Alaska and elsewhere, the defendant, JOSHUA WAHL, did knowingly transmit in interstate commerce a communication containing a threat to injure and kill Michael Chitwood as set forth in Paragraph 11. All of which is in violation of Title 18, United States Code, Section 875(c).

***The relevant emails and posting that form the basis of the evidence in this case found in the indictment at Dkt. 5.***

Upon information and belief, all discovery relevant to this case, specifically emails and other electronic evidence have been discovered to the defense. Even though typically motion dismiss based on insufficiency of the evidence are typically considered premature under Federal Rule of Civil Procedure12 due to incompleteness of evidence, here the principal evidence would be and is electronic evidence in the form of emails and internet posting. This evidence has been discovered to the defense. As such, discovery should be complete.

## II

## ARGUMENT

**THE INDICTMENT AGAINST WAHL UNDER 18 U.S.C. §875(c) SHOULD BE DISMISSED BASED ON INSUFFICIENT EVIDENCE AND VIOLATION OF HIS CONSTITUTIONAL RIGHT TO FREE SPEECH.**

To affirm a conviction under any threat statute that criminalizes pure speech, we must find sufficient evidence that the speech at issue constitutes a "true threat," as defined in *Black*. Because the true threat requirement is imposed by the Constitution, the subjective test set forth in Black must be read into all threat statutes that criminalize pure speech. United States v. Bagdasarian, 652 F.3d 1113, 1116 (9th Cir. 2011). A conviction under 18 U.S.C. § 875(c), in addition to the knowing transmission of an interstate threat, requires specific intent to threaten. United States v. Sutcliffe, 505 F.3d 944, 952, 960-61(9th Cir. 2007). Showing of "intent to threaten"

5

required by 18 USCS § 875 is showing of specific intent. United States v. Twine, 853 F.2d 676, 1988 U.S. App. LEXIS 10110 (9th Cir. 1988). To constitute a true threat, a statement must meet "an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault," and "the speaker must subjectively intend to threaten." United States v. Keyser, 704 F.3d 631, 638 (9th Cir. 2012) [internal citations omitted]. "Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." Planned Parenthood v. Am. Coalition of Life Activists, 290 F.3d 1058, 1075 (9th Cir. 2002) (en banc) (quoting United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir. 1990))

In United States v. Bagdasarian, 652 F.3d 1113 (9th Cir. 2011), Bagdasarian posted comments on an online message board directed at then-Presidential candidate Barack Obama. One statement referred to Obama as a "niggar" who "will have a 50 cal in the head soon." The second statement implored others to "shoot the nig." Reversing Bagdarian's conviction, the court concluded that:

> Neither statement constitutes a threat in the ordinary meaning of the word: "an expression of an intention to inflict . . . injury . . . on another." *Webster's Third New International Dictionary* 2382 (1976). The "Obama fk the niggar" statement is a prediction that Obama "will have a 50 cal in the head soon." It conveys no explicit or implicit threat on the part of Bagdasarian that he himself will kill or injure Obama. Nor does the second statement impart a threat. "[S]hoot the nig" is

> instead an imperative intended to encourage others to take violent action, if not simply an expression of rage or frustration. The threat statute, however, does not criminalize predictions or exhortations to others to injure or kill the President. It is difficult to see how a rational trier of fact could reasonably have found that either statement, on its face or taken in context, expresses a threat against Obama by Bagdasarian.

Bagdasarian, at 1119.

The court reasoned that the first statement, which referred to Obama as a "niggar" who "will have a 50 cal in the head soon," coupled a racial slur with an assassination forecast. The second statement implored others to "shoot the nig," lest the "country [be] fkd for another 4 years+". There was insufficient evidence that either statement constituted a threat or would be construed by a reasonable person as a genuine threat by Bagdasarian against Obama. Bagdasarian, at 1120. The plain meaning of the words do not constitute a threat and do not fall within the offense punished by the statute. Id. The prediction that Obama "will have a 50 cal in the head soon" is not a threat on its face **because** it does not convey the notion that Bagdasarian himself had plans to fulfill the prediction that Obama would be killed, either now or in the future. Bagdasarian, at 1123. Neither does the "shoot the nig" statement reflect the defendant's intent to threaten that he himself will kill or injure Obama. Rather, "shoot the nig" expresses the imperative that some unknown third party should take violent action. The statement makes no reference to Bagdasarian himself and so, like the first statement, cannot reasonably be taken to express his

intent to shoot Obama. Id. When the law punishes words, the surrounding circumstances must be examined to discern the significance of those words' utterance, but must not distort or embellish their plain meaning so that the law may reach them. Bagdasarian, at 1120. The court proceed draw an analytical comparison to the reasoning applied in United States v. Sutcliffe, 505 F.3d 944 (9th Cir. 2007), a case in which 18 U.S.C. § 875(c), was at issue as here. Id. The court stated that "in *Sutcliffe*, we affirmed a conviction under another threat statute, 18 U.S.C. § 875(c), which, in addition to the knowing transmission of an interstate threat, requires specific intent to threaten. 505 F.3d at 952, 960-61; *see also* United States v. Twine, 853 F.2d 676, 680 (9th Cir. 1988)." Id.

> We held that the district court did not abuse its discretion by allowing the Government to present evidence of the defendant's gun possession to demonstrate that he actually intended to threaten violence. Id. at 959. The fact of the defendant's gun possession was not determinative of the defendant's intent, however, but just one among many pieces of evidence relevant to the language and context of the threats that we considered in determining that the defendant had the requisite specific intent to threaten. **Most important** in *Sutcliffe* were the first-person and highly specific character of messages such as "**I** will kill you," "**I'm** now armed," and "You think seeing [your license plate number posted on my website] is bad . . . trust us when we say [it] can get much, much, worse. . . . [I]f you call this house again . . . , I will personally send you back to the hell from where you came." Id. at 951-52.

Bagdasarian, at 1123.

Here, Wahl statements: "Blind and kill Chitwood in irl," i.e., that he (Wahl) was an "actual terrorist"; that he (Wahl) had "explosives, sound, plasma, lasers and

8

ap ammo," and; "Kill [Chitwood] in irl, shoot him the fucking head with a overpressure 10mm round" or any other statement Wahl is alleged to have made fail to express any intent on Wahl's part to take any action to kill or injure Officer Chitwood. Rather, Wahl's statements express the imperative that some unknown third party should take violent action. When compared to Sutcliffe, as analyzed Bagdasarian, at 1123, in Wahl's case there were no first-person and highly specific character of messages such as "I will kill you," "I'm now armed," and "I will personally send you back to the hell from where you came." Like in Bagdasarian, the evidence is insufficient to support the indictment under Title 18, United States Code, Section 875(c). In context of protected speech, there is no true threat. Consequently, counts 2-5 must be dismissed.

Even though charged under a different statutory provision, count 1 must also be dismissed.

In United States v. Osinger, 753 F.3d 939, (9th Cir. 2012), referring to 18 U.S.C. § 2261A(2)(A), the court stated that:

> The Fourth Circuit observed that "[t]he statute contains three important elements. **First,** the defendant must possess either the intent to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State . . ." Id. at 309-10 (citation and internal quotation marks omitted). "**Second**, the defendant must pursue that intention through a course of conduct, defined as a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose, that makes use of a facility of interstate commerce[.]" Id. at 310 (citations and internal

9

quotation marks omitted). "**Finally**, the defendant's conduct must in fact cause substantial emotional distress to the intended victim or place that person in reasonable fear of the death of, or serious bodily injury . . ." *Id*. (citation, alterations, and internal quotation marks omitted).

Osinger, at 947.

In United States v. Sryniawski, 48 F.4th 583, (8th Cir. 2022) Sryniawski challenged sufficiency of the evidence to convict him of cyberstalking under § 2261A(2)(B) when the statute is interpreted in a way that is consonant with the First Amendment. The court stated that:

> A defendant is guilty of cyberstalking if he (1) "with the intent to . . . harass [or] intimidate," (2) uses "any . . . electronic communication system of interstate commerce . . . to engage in a course of conduct," that (3) "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to" the victim or his immediate family. 18 U.S.C. § 2261A(2)(B).
> The *mens rea* element, as charged in this case, requires that a defendant act with the intent to "harass" or "intimidate." *Id*. § 2261A(2). If these terms are construed in their broadest sense, however, they would infringe on rights protected by the First Amendment. Broadly defined, "harass" can mean simply "to vex, trouble, or annoy continually or chronically." *Webster's Third New International Dictionary of the English Language Unabridged* 1031 (1993). "Intimidate" can mean "to make timid or fearful." *Webster's Third New International Dictionary of the English Language Unabridged* 1184 (2002).
>
> Even where emotional distress is reasonably expected to result, the First Amendment prohibits Congress from punishing political speech intended to harass or intimidate in the broad senses of those words. The Free Speech Clause protects a variety of speech that is intended to trouble or annoy, or to make another timid or fearful.

Sryniawski, at 587.

Continuing its analysis, the court noted that:

10

In *Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011), for example, the Supreme Court held that protestors at a serviceman's funeral had the right to display signs that read, "Thank God for Dead Soldiers," "God Hates Fags," and "You're Going to Hell." *Id.* at 448, 461. In *R.A.V. v. City of St. Paul*, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992), the Court declared unconstitutional a criminal ordinance that prohibited the display of burning crosses, Nazi swastikas, and other symbols that the perpetrator had reasonable grounds to know would arouse "anger, alarm or resentment in others on the basis of race, color, creed, religion or gender." *Id.* at 380, 391. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988), held that the First Amendment protected a parody that depicted a prominent minister having drunken sex with his mother. *Id.* at 47-48, 50; *see also Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001) (Alito, J.) ("There is no categorical 'harassment exception' to the First Amendment's free speech clause."). For this reason, the cyberstalking statute cannot be applied constitutionally to a defendant who directs speech on a matter of public concern to a political candidate with intent merely to trouble or annoy the candidate. *United States v. Yung*, 37 F.4th 70, 78-79 (3d Cir. 2022); *United States v. Ackell*, 907 F.3d 67, 76 (1st Cir. 2018).

> To sustain the conviction in this case, therefore, the government must identify sufficient evidence for a jury to find that Sryniawski acted with intent to "harass" or "intimidate" in a sense that is not protected under the First Amendment. For example, "criminal harassment" is unprotected where it "constitutes true threats or speech that is integral to proscribable criminal conduct." *Ackell*, 907 F.3d at 76; *see United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat," where the speaker intends to place the victim "in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 360, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003).

Sryniawski, at 587-588.

Here, first, the government cannot reasonably establish that Wahl acted with intent to harass or intimidate in a sense not protected under the First Amendment. As previously argued above regarding count 2-5, Wahl statements do not meet the true

11

threat threshold standard because they cannot be reasonably interpreted as having been calculated to communicate a threat. Wahls words are protected under the first amendment. Second, even if Wahl intended to harass or intimidate Officer Chitwood, it can only be in the broad sense of the word because Wahl never had any direct harassing or threatening communication emailed or sent to Officer Chitwood. He is accused of posting information on online public forums for which there is no evidence that Officer Chitwood was a member of or even saw the messages. The one email sent directly to Officer Chitwood does not communicate a true threat. It only informs Officer Chitwood of what weapons Wahl allegedly possessed. In fact, within the images of Officer Chitwood's face being burnt, the image has wording on in that indicates that Officer Chitwood was being burnt in Minecraft which is a video game. But even if Officer Chitwood had seen the messages, the words in the messages were no different than the free speech words that even though annoying and troubling or meant to make a reader timid or fearful, the words are protected free speech under the ruling in Snyder v. Phelps, 562 U.S. 443 (2011), R.A.V v. City of St. Paul, 505 U.S. 377 (1992), Hustler Magazine Inc., v. Falwell, 485 U.S. 46 (1988) and Saxe v. State Coll. Area Sch. Dist, 240 F.3d 200 (3rd Cir. 2001) because the genesis of the issue and words were related to a matter of public concern -antisemitism- and directed to a public official -the Sheriff of Volusia County. The government cannot

reasonably point to anything in the email or posting that was not protected speech or that was a real threat.

Finally, the transmission of one allegedly threatening email is not a course of conduct because lawful acts of logging onto the computer, using the internet and sending other emails cannot be aggregated to with criminal conduct to establish the "course of conduct" required to convict under the statute. The cyberstalking statute requires proof that the defendant engaged in a course of conduct that consists of 2 or more acts evidencing a continuity of purpose. See <u>Srynawski</u>, at 589. Here, there is nothing criminal about Wahl's emailing Officer Chitwood.

## III

## CONCLUSION

Wahl's motion to dismiss the indictment should be granted.

DATED this, 21st day of April 2025.

/s/ F. Adoko
FRANCIS ADOKO
REX LAMONT BUTLER AND ASSOCIATES INC.,
ATTORNEYS FOR JOSHUA WAHL

<u>Certificate of Service</u>

I hereby certify that this document was served upon the United States through AUSA Seth M. Beausang through ECF filing on April 21st 2025.

/s/F. Adoko
Francis Adoko